FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

2012 JAN -9  AM 10: 55

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| YVETTE VANDALSEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. |
| | ) |
| CHRYSLER GROUP, LLC. | ) |
| and LOCAL 685, UNITED | ) **1:12-cv-0024 SEB-TAB** |
| AUTOMOBILE, AEROSPACE AND | ) |
| AGRICULTURAL IMPLEMENT | ) |
| WORKERS OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiff Yvette VanDalsen ("VanDalsen"), brings this action against Defendants Chrysler Group, LLC ("Chrysler") and Local 685 of the United Automobile, Aerospace and Agricultural Implement Workers of American ("the Union"), alleging that the Chrysler and the Union violated the Americans with Disabilities Act of 1990 (hereinafter "ADA"), 42 U.S.C. § 12101 *et. seq.*, as amended. VanDalsen further alleges, pursuant to Section 301 of the Labor Management Relations Act ("Section 301"), 29 U.S.C. § 185(a), that Chrysler breached its Collective Bargaining Agreement ("CBA") with the Union with respect to VanDalsen, and that the Union breached its duty of fair representation to VanDalsen.

### PARTIES

2. At all times relevant to this action, VanDalsen resided within the Southern District of Indiana.

3. At all times relevant to this action, Chrysler maintained manufacturing facilities and conducted business in Kokomo, Indiana, within the Southern District of Indiana.

4. At all times relevant to this action, the Union represented VanDalsen and other employees at Chrysler's Kokomo facilities, pursuant to the CBA.

## JURISDICTION AND VENUE

5. VanDalsen is, and at all times relevant to this action has been, a "qualified individual" within the meaning of 42 U.S.C. § 12111(8), and has a "disability" within the meaning of 42 U.S.C. § 12102(1). Chrysler and the Union knew of VanDalsen's disability, and/or perceived VanDalsen as disabled.

6. VanDalsen is, and at all times relevant to this action has been, an "employee" within the meaning of 42 U.S.C. § 12111(4), and an employee represented by the Union within the meaning of 29 U.S.C. § 185(b).

7. Chrysler is an "employer" as that term is defined by 42 U.S.C. § 12111(5)(A), and is "an employer whose activities affect commerce" within the meaning of 29 U.S.C. § 185(b).

8. The Union is a "labor organization which represents employees in an industry affecting commerce" within the meaning of 29 U.S.C. § 185(b), and a "labor organization" within the meaning of 42 U.S.C. § 12111(2).

9. This Court has jurisdiction over this action pursuant to 28 USC § 1331, 28 USC § 1343, 29 U.S.C. § 185(c) and 42 U.S.C. § 12117.

10. VanDalsen satisfied her obligation to exhaust her administrative remedies, having timely filed her charges alleging violations of the ADA with the U.S. Equal Employment Opportunity Commission, receiving Notices of Suit Rights thereon, and timely filing this action within ninety (90) days of receiving the notices.

11. All of the events, transactions, and occurrences pertinent to this lawsuit have occurred within the geographical environs of the Southern District of Indiana and all parties are located

therein. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

12. VanDalsen was hired by Chrysler in 1998, and became a member of the Union at that time.

13. At all relevant times VanDalsen met or exceeded Defendant's legitimate expectations of performance.

14. In 2002, VanDalsen discovered that she suffered from a disability, pancreatitis divisum ("PD"), a congenital defect of the pancreatic ducts, causing severe inflammation of the pancreas and severe abdominal pain.

15. As a result of her disability, VanDalsen was required to take significant amounts of sick leave, although VanDalsen at no time exceeded the amount of sick leave to which she was entitled pursuant to the CBA.

16. Also as a result of her disability, VanDalsen was placed on permanent work restrictions, including but not limited to, restrictions on lifting, pushing/pulling, prolonged standing and bending. Additionally, VanDalsen was not allowed to work in the assembly area, or work the third shift because of side effects of medication she was retired to take.

17. In December 2008, VanDalsen was part of a general layoff of employees at Chrysler's Kokomo facilities. She was on layoff status until March 2010.

18. While VanDalsen was on layoff status, Union Shop Chair Bill Guinan ("Guinan") placed VanDalsen on a transfer list to be sent to ITP1.

19. While on layoff, VanDalsen had surgery, necessitated by her disability, to place four stents in her pancreatic ducts. VanDalsen's stents can only remain in place for eight to ten weeks, before they must be removed and/or replaced.

20. When VanDalsen returned from layoff in March 2010, she had just had surgery to place the most recent set of stents.

21. VanDalsen was placed with a group of employees being assigned to Chrysler's Kokomo Transmission Plant ("KTP"),[1] where she was assigned to Department 8400 under Supervisor Eric Grady on the first shift. Within the department, VanDalsen was assigned to the 704 Line, and her immediate supervisor was James Parks.

22. VanDalsen informed Parks of her restrictions. Parks assigned VanDalsen to unload a parts washer for which the usual operator was absent. The unloading job was performed while seated, and fit within VanDalsen's restrictions.

23. The last week in March 2010, VanDalsen was reassigned to the second shift, supervised by Pete Lynch ("Lynch").

24. Shortly after her reassignment, Lynch, together with the team leader, began to harass VanDalsen by deliberately assigning her to positions that violated her restrictions. In addition, Lynch became quite angry, telling VanDalsen in a loud voice to "get out of my face until I can find a job for you." Eventually, VanDalsen was "loaned" to another department.

25. Upon reporting to work the following day, VanDalsen was instructed to report to the Health & Safety Office. When she arrived, she found both Chrysler Health & Safety officials and representatives of the Union, including Shop Steward Dave Johnson ("Johnson").

26. VanDalsen was told, "If you don't change your PQXs (restrictions), you're going to be put out on [U.S. Highway] 31 with no job." VanDalsen was then told that, while her "home" department would continue to be 8400, she would work in Department 7900 until further notice.

27. VanDalsen in fact worked in Department 7900 from March through May 2, 2010 in

---

[1] Chrysler operates a total of four facilities in Kokomo: Kokomo Transmission Plant ("KTP"), Chrysler Transmission Plant ("CTP"), Indiana Transmission Plant 1 ("ITP1"), and Indiana Transmission Plant 2 ("ITP2").

4

Department 7900, and experienced no difficulties in that Department.

28. However, since her "home" department was still 8400, VanDalsen would stop by her tool box in that department at the beginning of each shift to prepare for work. Beginning shortly after her temporary assignment to Department 7900, VanDalsen's tool box began to be tampered with.

29. VanDalsen reported the tampering to Johnson, but Johnson refused to investigate or intervene in any way. The tampering continued and escalated until VanDalsen left in May 2010 for another surgery. The tampering included, but was not limited to, human feces and mucous being placed in or on the tool box.

30. Although VanDalsen repeatedly reported the harassment to Johnson, he refused to take action, instead telling VanDalsen to report the situation to her supervisor.

31. Throughout the period during which she worked in Department 7900, VanDalsen routinely signed for job postings in Department 8400, looking for a permanent job that would be within her restrictions.

32. When VanDalsen returned from her surgery approximately three weeks later, she was once again assigned to Department 8400.

33. VanDalsen observed that many of the posted jobs for which she had applied appeared to be filled by employees whom VanDalsen knew to have less seniority than she, or who had not been in the department when the jobs were initially posted. According to the provisions of the CBA, VanDalsen should have received preference for the positions in either case.

34. VanDalsen learned that Johnson had told other employees that the jobs were "open" and that VanDalsen had not applied for the positions, which was untrue.

35. When VanDalsen raised the issue with Johnson, he informed her that she did not get the positions because she had been on sick leave when the position was actually filled. VanDalsen

pointed out that under the CBA, she should have been selected for the position as long as she was on the department's role, which she had been while on sick leave.

36. Throughout this period, despite knowledge of VanDalsen's physical impairments and medical restrictions, Chrysler supervisors repeatedly assigned VanDalsen to work the exceeded her restrictions, and refused to allow VanDalsen to work in positions for which she was qualified, and which were within those restrictions.

37. VanDalsen was also told repeatedly that she would not be allowed to work overtime unless her restrictions were removed. Instead, employees from other departments to perform work on overtime that VanDalsen could have done within her restrictions.

38. VanDalsen attempted to pursue the matter through the CAB's grievance process, but Union leadership refused to file the grievance in her behalf.

39. In December 2010, VanDalsen's goddaughter overheard union officials discussing VanDalsen's medical condition and work restrictions in a public place. She called VanDalsen, and VanDalsen was personally able to overhear the conversation on the telephone. The conversation contained a number of comments the criticized VanDalsen for requesting accommodations or accepting work restrictions.

40. On February 2, 2011, VanDalsen went on leave once again due to her PD.

41. On or about February 25, 2011, VanDalsen filed her original EEOC Charge of Discrimination, incorrectly identifying CRA Occupational Health ("CRA"), rather than Chrysler, as her employer. CRA manages the occupational health program at all of Chrysler's 26 North American facilities, including those in Kokomo.

42. VanDalsen filed an amended charge, correctly identifying Chrysler as her employer, on March 29, 2011.

43. Shortly after filing her EEOC Charge, VanDalsen was informed she would be transferred from her KTP position to a position at ITP1 which was not compatible with her medical restrictions. This transfer was a violation of the CBA, which prohibits Chrysler from moving employees who are currently "off role."

44. Six other employees who were also off role were not on the list to be reassigned.

45. When VanDalsen raised the matter with Jeff Schrock, the Union's Business Agent, Schrock refused to assist VanDalsen in addressing the issue with Chrysler.

46. On or about May 15, 2011, based on the attempt to transfer her to ITP1, VanDalsen filed charges of retaliation against the Union and Chrysler.

47. On September 8, 2011, when VanDalsen's move to ITP1 became effective, she once again attempted to file a grievance, because two employees with lower seniority were moved from ITP1 to KTP at the same time VanDalsen was being moved *from* KTP. Once again, the Union refused to pursue her grievance.

## LEGAL ALLEGATIONS

### Count One:  Violation of the ADA by Chrysler

48. VanDalsen hereby incorporates paragraphs one (1) through forty-seven (47) of this Complaint.

49. VanDalsen is disabled, and/or is perceived as disabled, by Chrysler.

50. Chrysler unlawfully discriminated against VanDalsen in violation of her rights as protected by the ADA by subjecting her to terms and conditions of employment that were less favorable than those afforded to employees who were not disabled, and/or were not perceived as disabled.

51. Moreover, Chrysler failed to address VanDalsen's hostile work environment complaints

despite VanDalsen's complaints to her supervisors.

52. Chrysler's actions were intentional, willful and in reckless disregard of VanDalsen's rights as protected by the ADA.

53. VanDalsen has suffered damages as a result of Chrylser's unlawful actions.

### Count Two: Violation of the ADA by the Union

54. VanDalsen hereby incorporates paragraphs one (1) through fifty-three (53) of this Complaint.

55. VanDalsen is disabled, and/or is perceived as disabled, by the Union.

56. The Union unlawfully discriminated against VanDalsen in violation of her rights as protected by the ADA by failing to provide her with the same degree of representation afforded to Union members who were not disabled, and/or were not perceived as disabled.

57. Moreover, the Union failed to address VanDalsen's hostile work environment complaints despite VanDalsen's complaints to Union officials.

58. The Union's actions were intentional, willful and in reckless disregard of VanDalsen's rights as protected by the ADA.

59. VanDalsen has suffered damages as a result of the Union's unlawful actions.

### Count Three: ADA Violation (Hostile Work Environment) by the Union

60. VanDalsen hereby incorporates paragraphs one (1) through fifty-nine (59) of this Complaint.

61. VanDalsen is disabled, and/or is perceived as disabled, by the Union.

62. The Union unlawfully discriminated against VanDalsen in violation of her rights as protected by the ADA when Union officials allowed, and in some cases engaged in, harassment against VanDalsen because of her disability.

63. The harassment to which VanDalsen was subjected by the Union, its members and its officers and officials, was so severe or pervasive as to alter the terms and conditions of VanDalsen's employment.

64. The Union's actions were intentional, willful and in reckless disregard of VanDalsen's rights as protected by the ADA.

65. VanDalsen has suffered damages as a result of the Union's unlawful actions.

### Count Four: Violation of the ADA (Retaliation) by Chrysler

66. VanDalsen hereby incorporates paragraphs one (1) through sixty-five (65) of this Complaint.

67. VanDalsen engaged in protected activity by exercising or attempting to exercise her rights under the ADA, and by filing her initial EEOC Charges of Discrimination against Chrysler.

68. Chrysler unlawfully retaliated against VanDalsen for engaging in that protected activity by transferring her work assignment while she was on sick leave in contravention of the CBA, by denying her overtime, by repeatedly assigning her to work which was outside her medical restrictions, and by otherwise subjecting her to terms and conditions of employment that were less favorable than those afforded to similarly-situated employees who did not engage in protected activity.

69. Chrylser's unlawful actions were intentional, willful, and done in reckless disregard of VanDalsen's rights as protected by the ADA.

70. VanDalsen has been harmed by Chrysler's unlawful actions.

### Count Five: Violation of the ADA (Retaliation) by the Union

71. VanDalsen hereby incorporates paragraphs one (1) through seventy (70) of this Complaint.

72. VanDalsen engaged in protected activity by exercising or attempting to exercise her rights under the ADA, and by filing her initial EEOC Charge of Discrimination against the Union.

73. The Union unlawfully retaliated against VanDalsen for engaging in that protected activity by subjecting her a hostile work environment, refusing to pursue grievances in her behalf, and by refusing to afford her the same level of representation afforded to similarly-situated members who did not engage in protected activity.

74. The Union's unlawful actions were intentional, willful, and done in reckless disregard of VanDalsen's rights as protected by the ADA.

75. VanDalsen has been harmed by the Union's unlawful actions.

### REQUESTED RELIEF

WHEREFORE, Plaintiff, Yvette VanDalsen, respectfully requests that this Court enter judgment in her favor and award her the following relief:

a. Enjoin the Defendants from further violations of the Americans With Disabilities Act;

b. Order the Defendants, jointly and severally, to pay VanDalsen all wages, benefits, compensation, and other monetary loss suffered as a result of Chrylser's unlawful actions;

c. Order the Defendants to reinstate VanDalsen to her former position, with all benefits and seniority associated therewith, or award her front pay in lieu thereof;

d. Order the Defendants, jointly and severally, to pay VanDalsen liquidated damages for their wilful violations of the ADA;

e. Order the Defendants, jointly and severally, to pay VanDalsen's costs and attorney's fees incurred as a result of bringing this action;

f. Order the Defendants, jointly and severally, to pay VanDalsen pre- and post-judgment

interest on all sums recoverable; and

g.  Order the Defendants, jointly and severally, to afford VanDalsen all other legal and/or equitable relief this Court sees fit to grant.

## DEMAND FOR JURY TRIAL

Plaintiff, Yvette VanDalsen, by counsel, demands a trial by jury on all issues deemed so triable.

Respectfully submitted,

*[signature]*

Jay Meisenhelder, Atty. No. 19996-49
Employment & Civil Rights Legal Services
8206 Rockville Road, Box 322
Indianapolis, IN 46214
Office Telephone:   317/704-2414
Direct Telephone:   317/495-3222
Facsimile:          317/704-2410
Email:              jaymeisenhelder@gmail.com
Attorney for Plaintiff
