UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

YVETTE VANDALSEN,    )
          )
    Plaintiff,    )
          )
  vs.        )    1:12-cv-00024-SEB-TAB
          )
CHRYSLER GROUP, LLC, AND  )
LOCAL 685, UNITED AUTOMOBILE, )
AEROSPACE, AND AGRICULTURAL )
IMPLEMENT WORKERS OF   )
AMERICA,       )
          )
    Defendants.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**


  This cause is before the Court on separate motions for summary judgment, both

filed on May 17, 2013 by Defendants. Docket Nos. 51, 54.

   Plaintiff Yvette VanDalsen has brought this action against Defendants, Chrysler

Group, LLC ("Chrysler"), her current employer, and the union to which she belongs, Local

685 of the United Automobile, Aerospace, and Agricultural Implement Workers of

America ("Union") alleging that they discriminated against her because of her disability

and retaliated against her in violation of the Americans with Disabilities Act of 1990

("ADA"), 42 U.S. C. §§ 12112, *et seq*. Complaint at 1, ¶ 1. Ms. VanDalsen also alleges

that Chrysler breached its Collective Bargaining Agreement ("CBA") with the Union with

respect to her rights and that the Union breached its duty of fair representation to her. *Id.*

# FACTUAL BACKGROUND

Chrysler operates four manufacturing facilities in Kokomo, Indiana: the Kokomo Transmission Plant ("KTP"), the Indiana Transmission Plant 1 ("ITP1"), the Indiana Transmission Plant 2 ("ITP2"), and the Kokomo Casting Plant 1 ("KCP"). Def.'s Br. at 5. All non-management employees at the KTP, ITP1, and ITP2 operations are represented by the Union. *Id.* Ms. VanDalsen was hired by Chrysler in 1998 to work at the KTP; around this time she became a member of the Union and has remained a member throughout her employment, including during layoffs. Complaint at 3, ¶¶ 12-13; *Id.*

In 2002, Ms. VanDalsen was diagnosed with pancreatitis divisum, a disease that causes acute pancreatic inflammation accompanied by abdominal pain. Pl.'s Resp. at 15. Due to her condition Ms. VanDalsen took extended sick leave, as allowed by the Collective Bargaining Agreement ("CBA"). Complaint at 3, ¶ 15. Ms. VanDalsen also claims that beginning in 2002 she was placed on permanent work limitations by her physician, including, "restrictions on lifting, pushing/pulling, prolonged standing and bending," and was restricted to working outside the assembly area and only on first and second shifts; she claims these accommodations continued through 2008, when she was placed on a general layoff with other Chrysler employees. *Id.* at 1, ¶ 16-17. During her layoff, Ms. VanDalsen was placed on a transfer list to ITP1. She had surgery toward the end of this layoff to place four stents in her pancreatic ducts, devices which may remain in place no longer than ten weeks before they must be replaced or removed. *Id.* at 3-4, ¶ 19-20.

Ms. VanDalsen claims to have performed a number of jobs before the general layoff

that were consistent with her physical limitations; yet, after her reinstatement and while employed under different supervision, she claims that she was no longer afforded these accommodations. When she was recalled from layoff in March 2010, Ms. VanDalsen was assigned to Department 8400, which was supervised by Eric Grady at the Chrysler Kokomo Transmission Plant ("KTP"). *Id.* at 4, ¶ 21. During the last week in March 2010, she was reassigned to the second shift, which was supervised by Pete Lynch; her direct supervisor on the 704 line was James Parks. *Id.* at 4, ¶ 23. In response to her request for an accommodation similar to the permanent restrictions under which she had been working since 2002, Mr. Parks placed her in a parts loading position, which she was able to perform while sitting and thus accommodated her need to sit when she felt pain. Pl.'s Br. at 15; *Id.* at 4, ¶ 22. Shortly thereafter, Ms. VanDalsen was reassigned to the second shift and was directly supervised by Pete Lynch. Complaint at 4, ¶ 23.

Ms. VanDalsen alleges that with the reassignment to the second shift while under Mr. Lynch's supervision, Chrysler began to deny her access to jobs that she had previously performed with restrictions to accommodate her physical pain. Pl.'s Br. at 15. Ms. VanDalsen claims that Mr. Lynch harassed her by "deliberately assigning her to positions that violated her restrictions" and by shouting at her, "Get out of my face until I can find a job for you." Complaint at 4, ¶ 24. Chrysler health and safety officials and "representatives of the Union, including Shop Steward Dave Johnson" met with Ms. VanDalsen in March 2010, when she allegedly was told, "If you don't change your PCQs [restrictions], you're going to be put out on [U.S. Highway ] 31 with no job." *Id.* at 4, ¶

26, (brackets in original).

Shortly thereafter, Ms. VanDalsen was assigned to Department 7900 where she reported having no problems. *Id.* at 4, ¶ 24. However, she does describe harassing events that occurred from March 2010 through April 2010 in her "home" Department 8400, including the tampering of her toolbox (finding mucous and human feces inside or on the toolbox) which harassment neither Chrysler nor Shop Steward Mr. Johnson attempted to remedy. *Id.* at 4-5, ¶ 25-30. She recounts another instance of harassment that was a death threat, when a sign was placed upon her toolbox which read, "If I catch you outside, I'm going to kill you." Pl.'s Resp. at 38.

Ms. VanDalsen applied for but did not receive various jobs in the period from May 2010 through December 2010; during that period, she claims that Chrysler placed her in positions that were not appropriate to her medical restrictions and refused to place her in positions that did address her limitations. Complaint at 5-6, ¶ 31-36. She reports that she was not allowed to work overtime "unless her restrictions were removed." *Id.* at 6, ¶ 37.

Ms. VanDalsen filed her first charge[1] of discrimination with the Equal Employment Opportunity Commission ("EEOC"), against Chrysler and a concurrent complaint against the Union on or about February 25, 2011. Pl.'s Resp. at 26. Before the EEOC, Ms. VanDalsen claimed that she had been discriminated against on the basis of her disability from June 1, 2010 through February 15, 2011, and faced continued harassment from

---

[1] Ms. VanDalsen improperly identified the Respondent as "CRA Occupational Health Indiana" rather than Chrysler in her initial claim; however, the claim was amended to correctly name Chrysler as the employer on March 29, 2011. Pl.'s Resp. at 26.

particular supervisors and team leaders, namely, Bill Guinan, Ritchie Boraff, Dave Johnson and Ron York, all of whom were also Union officials. Chrysler's Br. at 10. She also noted that she had taken significant time off during this period, yet Chrysler had not allowed her to take this leave under the FMLA. Dkt. 69-15 at 1.

Ms. VanDalsen's filed a second disability discrimination charge against Chrysler along with a second concurrent complaint against the Union on May 7, 2011, alleging that the Defendants had retaliated against her by transferring her to ITP1 in response to her filing the first discrimination claim. Chrysler's Br. at 10.

The EEOC issued its right to sue notice, prompting Ms. VanDalsen to file this lawsuit against Chrysler and the Union on January 9, 2012 alleging that they discriminated against her because of her disability and retaliated against her in violation of the ADA by creating a hostile work environment. Complaint at 1, ¶ 1. Ms. VanDalsen also alleges that Chrysler breached its CBA with the Union with respect to her rights and that the Union breached its duty of fair representation to her. *Id.* Ms. VanDalsen has not been cleared for work since January 2012 and has not received work assignments from Chrysler.

Presently before the Court are motions for summary judgment filed by Defendants Chrysler and the Union.

<u>**ANALYSIS**</u>

**I.      Whether Ms. VanDalsen's claims are time-barred.**

First we address the issue of the timeliness of Ms. VanDalsen's claims of discrimination.  Chrysler contends that Ms. VanDalsen's discrimination claims are limited to those presented to the EEOC, and that any claims predating May 2010[2] are not recoverable.  42 U.S.C. § 2000e-5(f), incorporated by 42 U.S.C. § 12117(a); *see also Gorence v. Eagle Food Centers, Inc.,* 242 F.3d 759, 763 (7th Cir. 2001); Chrysler's Br. at 11.  They maintain that there were four jobs that Ms. VanDalsen applied for and did not receive which are at issue in this matter: (1) the grinder job on line 704; (2) the 200% job on line 935; (3) the 910 line; and (4) the air decay job on line 935.  Chrysler's Br. at 11. Since Ms. VanDalsen applied for these positions in March and April 2010, and her EEOC claim was filed a year later, on March 29, 2011, the Defendants contend that her claims are time-barred.  *Turner v. The Saloon, LTD.*, 595 F.3d 679, 684 (7th Cir. 2010); Chrysler's Br. at 13.

Ms. VanDalsen notes that she had applied for several positions that were offered to other applicants; however, she contends that these are merely examples, reflecting an ongoing series of harassing acts and as such, they serve as the framework or context for her

---

[2]      A timely filed EEOC charge of unlawful acts under the ADA must occur either 180 days before the last alleged employment action " except that [if] . . . the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . ., such charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).

hostile work environment claim.   Pl.'s Resp. at 32-42.

The Supreme Court has held that the applicable statute of limitations applies differently depending on whether a plaintiff asserts a claim for a discrete act of employment discrimination or for a hostile work environment. For the latter category, which would include the ongoing harassment claim that Ms. VanDalsen has brought, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).   Thus, under the reasoning of *Morgan*, an employee claiming a hostile work environment "may file the charge (under Title VII) ... within the statutory time from the last hostile act." *Morgan*, 536 at 122 (citing *Pruitt v. City of Chicago*, 472 F.3d 925, 927 (7th Cir.2006)).

Here, Ms. VanDalsen enumerates several incidents, including the tampering with her toolbox, which occurred within the applicable statutory time period entitling her to credit under the summary judgment standard.   Apparently acceding to the Defendants' untimeliness argument, Ms. VanDalsen also maintains that her EEOC complaint "makes clear that the issue she is raising is *not* whether she failed to get one of four specific jobs for which she applied, but rather, those four jobs are examples of the way Chrysler and the Union, working together, denied her a reasonable accommodation."   Pl.'s Resp. at 22.

Having fashioned her claims in this way as an ongoing discrimination she has satisfied the timeliness requirements of 42 U.S.C. § 12117(a) with respect to Chrysler.

As pertains to the Union, however, there are additional considerations, addressed below. The Union challenges the timeliness of Ms. VanDalsen's fair representation claim against it,[3] which is also subject to a 180-day statute of limitations. *Johnson v. Graphic Communications Int'l Union*, 930 F.2d 1178, 1182 (7th Cir. 1991). The six month period, according to the Union, began to run at the time it made its final decision on plaintiff's grievance or when the plaintiff discovered—or with reasonable diligence should have discovered—that the union would take no further action in support of her claims. *Chapple v. National Starch & Chem. Co.*, 178 F.3d 501, 505 (7th Cir. 1999); *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 912, 914-915 (7th Cir. 1999). Here, Ms. VanDalsen's disability claim had already been processed by the EEOC culminating in the issuance of the right-to-sue letter; the filing of this lawsuit occurred without any grievance having been filed by her against the Union. Since a fair representation claim is one that is typically brought in federal court under Section 301, there is no requirement that that claim first be brought before either the EEOC or the National Labor Relations Board. *Johnson v. Artim Transp. Sys., Inc.,* 826 F.2d 538, 548 (7th Cir. 1987) (Seventh Circuit has held that when a plaintiff brings a claim of unfair representation under a collective bargaining agreement,

---

[3] Although the Plaintiff stipulates to the lack of timeliness of her fair representation claims in her response to the Defendants' motions for summary judgment (Pl.'s Resp. at 1, Fn. 2.) she continues to argue a lack of fair representation throughout her argument.

the claim will be independent of any other claims under Title VII; the time for filing a fair

representation claim is not tolled by pursuing a Title VII claim with the EEOC).   Thus, the

fair representation claim and discrimination claims are to be considered separately.

Ms. VanDalsen filed her Complaint on January 9, 2012.   During the six months

preceding that filing, the record reflects that she was on leave for several of them.

Nevertheless, Ms. VanDalsen did work during the month of September 2011, though she

reportedly left after five days due to her illness.   Pl.'s Resp. at 31; VanDalsen Dep. at 37.

The Union claims that Ms. VanDalsen has identified no action by the Union during the

six-month period prior to her filing the Complaint that violated the CBA.   In fact, they

claim, she has testified that she was content with the job she was working during that time.

VanDalsen Dep. at 35-37.   With no claim having been made against the Union during the

six month period prior to the filing of the Complaint, the Union maintains that there is no

basis for Ms. VanDalsen's claim that it breached its Duty of Fair Representation.

We agree with the Union's argument.   In her Complaint, Ms. VanDalsen initially

alleged that Chrysler breached its CBA with the Union with respect to Ms. VanDalsen, and

that the Union breached its duty of fair representation to her, pursuant to Section 301 of the

Labor Management Relations Act ("Section 301"),   29 U.S.C. § 185(a).   Thereafter, Ms.

VanDalsen has entirely failed to articulate any basis for these claims.   Having presented

any evidence in support of them, she has waived[4] them.   Pl.'s Resp. at 1, Fn. 2.   With

---

[4]        When a plaintiff fails to provide any arguments in favor of his claims and offers no

regard to the claimed breach of the duty of fair representation claim against the Union, the Union is entitled to summary judgment on the finding of waiver.

## II.    Defendants' Motions for Summary Judgment

Summary judgment is appropriate when the record establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.   Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are deemed genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).   In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  *Id.* at 255. However, neither the mere existence of some alleged factual dispute between the parties, id. at 247, nor the existence of some metaphysical doubt as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.   *Michas v. Health Cost Controls of Illinois, Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

The moving party bears the initial responsibility of informing the district court of

---

response to a defendant's arguments in favor of summary judgment on those claims, he has waived the claims. *See Goodpaster v. City of Indianapolis,* 736 F.3d 1060, 1075 (7th Cir. 2013) (holding that because the plaintiffs "did not provide the district court with any basis to decide their claims, and did not respond to the City's arguments, these claims are waived"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. (*See Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989)). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. (*See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003)). Further, a failure to prove one essential element necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323.

Thus, in determining whether genuine and material factual disputes exist in this case, we have considered the parties' respective briefs, memoranda and the exhibits attached thereto, and have construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective non-movant. *Matsushita,* 475 U.S. at 574.

Ms. VanDalsen claims that she was not hired into jobs that she had applied for because of her physical limitations and was not accommodated in such ways as would have entitled her to be assigned to jobs for which she was otherwise qualified. The ADA prohibits employers from, among other things, "discriminat[ing] against a qualified individual with a disability because of the disability of such individual." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 46 (2003) quoting 42 U.S.C. § 12101 *et. seq.* In order to survive a motion for summary judgment, a plaintiff in a discrimination case need not "produce the equivalent of an admission of guilt by the defendant." *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 737 (7th Cir.1994). Instead, to establish a violation of the ADA, an employee must show that her disability "played a role in the employer's decision-making process and had a determinative influence on the outcome." *Id.* (citing *Schuster v. Lucent Techs., Inc.,* 327 F.3d 569, 573 (7th Cir.2003)). An employee may make this showing using either the direct or indirect method of proof. *Id.*

Ms. VanDalsen has chosen to proceed under the direct method, yet lays out her evidence according to the familiar indirect method set forth in *McDonnell Douglas*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This method requires Ms. VanDalsen to establish a *prima facie* case of discrimination by showing that she: (1) was disabled under the ADA; (2) with or without accommodation was qualified for the position desired; (3) was subject to an adverse employment action; and (4) was treated less favorably than nondisabled employees. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12112. The parties dispute each of these factors, which are discussed,

in turn, below.

**A.      Whether Ms. VanDalsen was a qualified individual protected under the ADA.**

Chrysler acknowledges Ms. VanDalsen's claimed restrictions, which include "no pushing or pulling, no operating of moving machinery, no lifting over 10 pounds, and a required sit/stand option." Despite this concession, Chrysler summarily asserts that she was not a "qualified disabled person" under the ADA.   Chrysler suggests instead that her physical restrictions go toward her ability to perform the essential functions of a team member in Chrysler's plant.   Chrysler's Br. at 14.   Since Chrysler fails to provide any evidence to discount Ms. VanDalsen's claims of disability, for summary judgment purposes we shall credit Ms. VanDalsen's self report of disability, and proceed to the next essential element, whether she was qualified with or without accommodation to perform the job of a Chrysler team member.

**B.   Whether Ms. VanDalsen was qualified to perform the essential job functions with or without accommodation.**

It is plaintiff's burden to establish that she can perform the essential functions of her job "with or without reasonable accommodation."   *Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 680 (7th Cir. 2010) (quoting *Winfrey v. City of Chicago*, 259 F.3d 610, 614 (7th Cir. 2001)).   Whether a particular function is essential to an occupation requires an examination of various factors such as "the employee's job description, the employer's opinion, the amount of time spent performing the function, the consequences for not requiring the individual to perform the

duty, and past and current work experiences." *Id.* at 678 (7th Cir.2010) (quoting *Amnions v. Aramark Uniform Servs.,* Inc., 368 F.3d 809, 819 (7th Cir.2004)). Discussing or referencing a previous position and the completion of its responsibilities by itself is insufficient proof to meet this burden. *Id.* at 680.

The KTP, ITP1, and ITP2 plants are organized into departments, with each department consisting of a certain number of teams, each of those teams in turn consisting of six to ten employees, who periodically rotate job assignments. Chrysler's Br. at 14. Chrysler argues that there are few, if any, positions for which Ms. VanDalsen is qualified without accommodation. Chrysler suggests that each job is dependent on the others given the team rotation practice; in addition, all employees are required to rotate within their assigned teams. Chrysler asserts that, even with accommodation, Ms. VanDalsen is not qualified for Chrysler assembly work because she cannot perform the standing work required of product assembly or work line teams. To explain its inability to accommodate Ms. VanDalsen's disability, Chrysler describes in detail its rotation guidelines.

The requirements of the CBA in effect from April 2009 through September 2011, specifiy that "'non-skilled direct and indirect labor classifications should be consolidated, and moved to a strict team based structure, through utilization of team members/ leaders,'" and that full-team rotation will be implemented. Chrysler's Br. at 3. Though Chrysler previously allowed Ms. VanDalsen to remain in certain jobs and thus to skip rotations, Chrysler argues that it should not be held to these exceptions on a continuing basis (*see Gratzl*, 601 F.3d at 680) given that other employees are required to rotate within teams, the

great majority of whom are also required to "stand all day." Chrysler's Br. at 15.

Ms. VanDalsen counters that, in practice, the CBA has not been fully implemented, noting areas of work to which she was assigned—namely departments 7900 and 8400—which did not employ full rotation. These variations in practice were corroborated by her co-workers, Allen K. Wallen, who attests that, in calendar years 2010 through 2012, department 8400 did not rotate positions; MeShell Wallen, who says the same as Mr. Wallen; and Pamela J. Durham, who avers that her teams in the 7900 department did not rotate jobs. Pl.'s Resp. at 23. Ms. VanDalsen additionally states that the practice of rotating jobs within a team "was confined for the most part to the assembly operations, as opposed to the production operations where VanDalsen worked." *Id.*

> "[T]here were situations in which Chrysler and Union together agreed to allow employees with restrictions to work a particular job, even if the employee did not have sufficient seniority to hold it, simply to provide a reasonable accommodation. (Stafford Dec.). Even in operations where rotation was practiced, team members were sometimes required to "rotate around" an individual with restrictions who might only be able to perform one specific job. (VanDalsen Dec., Stafford Dec.). Pl.'s Br. at 23.

Whether the rotation policy was implemented consistently by Chrysler does not address the issue of Ms. VanDalsen's qualifications to perform the job's essential functions, which she has failed to address. *Gratzl*, at 680.

Chrysler asserts that no legal responsibility extends to an employer to reassign an employee to a permanent light duty position. *See Gratzl*, at 680; *Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002). Thus, Ms. VanDalsen's request for such does

not constitute has not requested a *reasonable* accommodation, as defined by the ADA. *Gratzl*, at 678 (holding that rotating through courtrooms is an essential function of a court reporter and plaintiff's request to be assigned solely to the control room was not a reasonable request under the ADA); (see also *Dargis v. Sheahan*, 526 F.3d 981, 987 (7th Cir. 2008) (holding that a plaintiff's "inability to rotate through the various positions of a correctional officer means that he cannot perform the essential functions of the job). Chrysler's Br. at 14-5. Chrysler further contends that no employer is required to distribute to employees essential job functions "that the individual who holds the job would have to perform, with or without reasonable accommodation, in order to be considered qualified for the position." *Gratzl,* at 680. A plaintiff is entitled only to a reasonable accommodation, not to an accommodation of her choice. *Schmidt v. Methodist Hosp. of Indiana, Inc.,* 89 F.3d 342, 344–45 (7th Cir.1996).

Ms. VanDalsen's broad assertions that she meets the essential qualifications of the job based on the fact that she previously held jobs at Chrysler fail to satisfy this element, which is essential to her *prima facie* claim of discrimination. Having failed in this second essential step by failing to show that with or without accommodation was qualified for the positions at Chrysler, we do not consider the last two elements of her *prima facie* claim. Accordingly, summary judgment shall be awarded in favor of Chrysler.

**C.** **Whether Chrysler retaliated against Ms. VanDalsen.**

Well established principles of law establish that discrimination can and does arise in the form of retaliation. *Benedict v. Eau Claire Pub. Sch.,* 139 F.3d 901 (7th Cir. 1998)

(subjecting disabled employee to severe harassment constitutes retaliation). Chrysler counters that any such harassment/ discrimination claims must first be filed with the EEOC. Chrysler's Br. at 18. In particular, Ms. VanDalsen's claims regarding the alleged tampering with her toolbox were never advanced prior to the filing of this lawsuit and are therefore barred. *Id.*

Ms. VanDalsen responds that she filed "retaliation charges against both Chrysler ('Charge 047') and the Union ('Charge 046')" on the basis of the ongoing harassment to which she had been subjected. Pl.'s Resp. at 33. This is not a charge she brought in her EEOC complaint. Ms. VanDalsen contends that she is entitled to "proceed on claims not explicitly set forth in a charge of discrimination if the claim is like or reasonably related to the EEOC charges, and the claim in the complaint reasonably could be expected to grow out of an EEOC investigation of the charge" citing *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002). Pl.'s Resp. at 33.

The Court is not required to "range far and wide looking for any bad acts ever committed by an employer and then conclude that because the employer is bad, it must have discriminated against a particular plaintiff." *Gorence v. Eagle Food Centers, Inc*., 242 F.3d 759, 763 (7th Cir. 2001). Because discrimination claims must first be filed with the EEOC (29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(f)), we examine the specifics of Ms. VanDalsen's discrimination charges to determine whether they suffice to have put both Chrysler and the Union on notice of these acts of harassment and retaliation.

Ms. VanDalsen asserted, in part: "Respondent refuses to honor my restrictions,

continually denying [to me] positions that I am capable of being placed in; such as: grinder, part-checker and washer/loader. Additionally, I have been harassed by Dave Johnson and Ron York. Both Johnson and York disclosed my medical information to a co-workers (sic) and I was threatened to 'be put out on Highway 31' if I did not have restrictions lifted." Ms. VanDalsen added a handwritten and initialed notation: "Harassed also by Bill Guinan and Ritchie Boruff." Dkt. 69-15 at 1. In these charges, Ms. VanDalsen alleged that "she had won a bid for the day shift Air Decay job on the 935 Line, and that since filing her original charges, she 'discovered that both [Chrysler and the Union had] colluded' to take that job away from her." Pl.'s Resp. at 33. She further identified the attempted transfer from KTP to ITP1 in 2011 as an incident of retaliation. Pl.'s Resp. at 33.

These claims are specific enough to put Defendants on notice that its supervisors and Union leadership are being accused of harassment and of creating an environment in which Ms. VanDalsen felt that she was being singled out and discriminated against on the basis of her physical limitations. As such, Plaintiff has satisfied the requirement that she exhaust her administrative remedies through the EEOC.

The *McDonnell Douglas* burden-shifting test applies to Ms. VanDalsen's retaliation claim just as it does with regard to her disability discrimination claim. *Knox v. State of Indiana,* 93 F.3d 1327, 1333 (7th Cir.1996). To make out a *prima facie* case of retaliation, a plaintiff must present sufficient evidence to establish that: (1) she engaged in statutorily-protected conduct; (2) she suffered an adverse employment action; and (3) there

was a causal connection between the two. *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010) (citation omitted). Under the *McDonnell Douglas* framework, if Chrysler shows a legitimate, non-discriminatory reason for its actions, the burden shifts back to Ms. VanDalsen to show pretext. As previously discussed, the evidence presented on a motion for summary judgment must be viewed in the light most favorable to the non-movant. *Matsushita*, 475 U.S. 574.

It is well-settled that the filing of an EEOC charge is considered a statutorily protected activity for purposes of asserting an ADA retaliation claim. (*See Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 658 (7th Cir. 2012); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006); *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 533 (7th Cir. 2003) (holding there is "no dispute that [the plaintiff] satisfied the first element by filing her EEOC charge")). In filing her EEOC claims on February 25, 2011 (as amended March 29, 2011), Ms. VanDalsen engaged in protected activity under the ADA. The Defendants counter that Ms. VanDalsen has adduced no evidence of any link between her filing of the ADA claim and an adverse employment action.

When considering whether an employee suffered an adverse action in retaliation under the ADA, the standard to be applied is identical to that in the Title VII context, to wit, whether a reasonable worker would be dissuaded from lodging a charge in the face of such action. (*See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405 (2006)) (Actions constitute retaliation under Title VII if they could well "dissuade a reasonable worker from making or supporting a charge of discrimination.") Much of

Plaintiff's argument, however, is based on self-report of activities that she argues, created a harassing and hostile work conditions. (*See Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1014 (7th Cir. 1997), ruling that more than mere speculation is required to support an inference that protected activity and the employer's acts are linked.) Hostile work environment claims are typically associated with sexual harassment rather than disability claims. While the Seventh Circuit has not expressly found a cognizable claim based on hostile environment or harassment, we will proceed on the basis that it is a cognizable claim. *Silk v. City of Chicago*, 194 F.3d 788, 803 (7th Cir. 1999); (see also *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir.1996)

Thus, we shall examine these incidents, any one of which alone is insufficient to raise a claim; furthermore, we treat Ms. VanDalsen's adverse action and harassment allegations together since they are best construed as a single hostile work environment claim. If the alleged harassment was "severe or pervasive enough to create a hostile work environment," then we must credit Ms. VanDalsen's theory. *Turner,* at 685 (citing *Lapka*, 517 F.3d at 982). "Whether the harassment rises to this level turns on a constellation of factors that include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Turner*, at 685 citing *Hostetler*, 218 F.3d at 806-07 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Further, a claim for a hostile work environment must

be tested both objectively and subjectively. *Id*. That is, the plaintiff must subjectively believe that the discriminatory harassment was sufficiently severe or pervasive to have altered the working environment, and the harassment must also be sufficiently severe or pervasive, from the standpoint of a reasonable person, to create a hostile work environment. *Id.* Since Ms. VanDalsen has brought forth this complaint the subjective component of this inquiry is satisfied.

We turn next to the question of whether Chrysler created such an objectively hostile work environment based on or in response to Ms. VanDalsen's filing of her disability claim. The Seventh Circuit's sexual harassment cases under Title VII set a high standard for establishing a hostile work environment. (*See*, e.g., *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 978 (7th Cir.2000) (affirming summary judgment for employer where plaintiff alleged that her boss had asked if he could see pictures of her in suggestive lingerie; stated he preferred to see her in open-toed shoes; and asked her to look at pictures of women in bondage); *Galloway v. General Motors Service Parts Operations*, 78 F.3d 1164, 1168 (7th Cir.1996) (affirming summary judgment for employer where co-worker called plaintiff a "sick bitch" various times over a four-year period and made an obscene gesture); *Baskerville v. Culligan International Co.*, 50 F.3d 428, 430 (7th Cir.1995) (affirming summary judgment for employer where a supervisor referred to plaintiff as "pretty girl" and made a few isolated off-color comments, but never touched or physically threatened plaintiff or invited her to have sex with him); *Saxton v. American Telephone and Telegraph Co.*, 10 F.3d 526, 528-29, 534 (7th Cir.1993) (no

actionable harassment where a supervisor touched and kissed plaintiff in a bar, "lurched" at her while taking a walk in a park, and refused to speak to her); *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F .2d 333, 337 (7th Cir.1993) (summary judgment for employer upheld when one co-worker asked plaintiff for dates, called plaintiff a "dumb blond," put his hand on her shoulder several times, placed "I love you" signs in her work areas, and attempted to kiss her in a bar). In *Silk*, the Seventh Circuit held that plaintiff's allegations of disability discrimination did not satisfy the "severe" or "pervasive" element of her hostile work environment claim where the plaintiff alleged verbal abuse (including being called a "medical abuser" and "limited duty phony"), threats of physical violence, and "administrative harassment" by being denied requested assignments. *Silk*, 194 F .3d at 796-97. Ms. VanDalsen's claim mirrors that of the plaintiff in *Silk*.

Ms. VanDalsen claims that she was subjected to abusive language: "VanDalsen's supervisor, Pete Lynch, screamed at VanDalsen to '[g]o smoke a cigarette ... until I can find you something to f'ing do;'" (Chrysler SGI, ¶ 6) and Mr. Lynch "broadcast on his radio throughout the plant that he had an employee who "[didn't] want to do a damn thing." Chrysler SGI, ¶ 6. Further, someone, who Ms. VanDalsen was unable to identify, vandalized her toolbox "on nearly a daily basis from March 2010 to February 2011." *Id*., ¶ 8. Ms. VanDalsen "called union steward Dave Johnson nearly every day to report the vandalism and get help, but Johnson would not get involved." *Id*. The vandalism of Ms. VanDalsen's toolbox included "food, human spittle and feces being placed on her tool box." *Id*.; VanDalsen Dep. 109:18-19. Ms. VanDalsen found a sign on her toolbox that

said, "If I catch you outside, I'm going to kill you." Chrysler SGI, ¶ 10.   These actions are clearly persistent and offensive, and the written threat is plainly acute; however the Plaintiff fails to draw a clear line that ties these actions to her disability.   The Defendants note that during this same timeframe, for instance, another co-worker experienced similar tampering with her toolbox.   Moreover, while Ms. VanDalsen was asking for the Union to assist her, supervisors suggested that she move the box from department 8400 to department 7900, which she declined to do.   Dkt. 51-1 at 103.   Ms. VanDalsen also alleges that the Union and Chrysler attempted to transfer her out of jobs into which she had bid, such as the 935 Line air decay job, and received on the basis of her union seniority. Yet again, Ms. VanDalsen fails to show the clear relationship between this action and her physical limitations.   Thus, she has been unable to show that the abusive language and events surrounding the toolbox tampering were due to her disability.

Nevertheless, among the many complaints that Ms. VanDalsen enumerates, several do stand out as being directly linked to her disability.   There are instances where Ms. VanDalsen's co-workers referenced her disability: when co-worker Matt Friskey made repeated comments to her that she was "milking the system (VanDalsen Dep., p. 115:17-20); when a team leader known as to her as Ray-Ray, who had knowledge of VanDalsen's pancreatitis, stated that the Union had "told everybody down [on the plant floor]" about her medical condition (*Id.*, p. 116:8-19); and when Dan Keirns, a Union representative on the health and safety committee, expressed to her that she was lucky she still had a job because "they [didn't] want [her] down [on the plant floor] because [she] was

23

on sick leave all the time." *Id*, p. 116:15-19.   According to Ms. VanDalsen, she was not allowed to work overtime until every other employee in her department had been asked; and employees from other departments were allowed to work overtime in her own department before she was given an opportunity.   *Id*., p. 134-5.

There are also two events that were directly linked to her disability.   The first pertains to a conversation which Ms. VanDalsen overheard regarding the question of whether her health symptoms were credible or if she was malingering.   VanDalsen Dep., p. 144:5-13.   Ms. VanDalsen claims that in December 2010, during a Union Christmas party, Bill Guinan told other union members that "[t]here ain't a fuckin' thing wrong with [VanDalsen] or her pancreas, she just doesn't want to work."   Pier Dec.   According to Ms. VanDalsen's goddaughter, Melissa Pier, an employee at the restaurant where the party was being held, she overheard Mr. Guinan's remark and called Ms. VanDalsen, placing her cell phone in range of the conversation so that Ms. VanDalsen could listen.   As the conversation continued, Mr. Guinan and others, who are unnamed, referred to Ms. VanDalsen as "a piss poor worker," and claimed that she was "only milking the system to get paid for not working."   When one member of the group protested that Ms. VanDalsen really did have medical issues, Mr. Guinan dismissed the statement, saying he "[wouldn't] do anything for [Ms. VanDalsen] until she gets her PQX20 [restrictions] removed."   Ms. Pier also overheard Mr. Guinan say he wouldn't be surprised if Chrysler tried to get rid of Ms. VanDalsen, and added that he "[wouldn't] do anything to stop them if they [did]." The second occasion was when Mr. Guinan threatened Ms. VanDalsen that she would be

"put out on Highway 31" if she did not get her restrictions lifted. Pl.'s Resp. at 32; VanDalsen Dep., p. 19:17-18. These two incidents are directly linked to Ms. VanDalsen's physical limitations and are objectively hostile, so we will consider whether together with the comments from her co-workers they are reasonably regarded persistently hostile.

The Seventh Circuit has previously viewed a hostile environment as one which a reasonable person would find objectively, persistently abusive. *Silk v. City of Chicago*, 194 F.3d 788, 804 (7th Cir. 1999) (citing *Harris,* 510 U.S. at 21, 114 S.Ct. 367.) Applying that definition, Ms. VanDalsen must "demonstrate that a rational trier of fact could find that [her] workplace is permeated with discriminatory conduct—intimidation, ridicule, insult—that is sufficiently severe or pervasive to alter the conditions of her employment." *Silk,* 194 F.3d at 804. In making this determination, we consider all the events connected with her disability, including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367. In conducting this analysis, it is clear that the few incidents which can be credibly linked to Ms. VanDalsen's disability simply do not meet the rigor of this test; her examples are too few to meet the standard of pervasive and too lacking in acuteness to be deemed severe. Neither has Ms. VanDalsen expressed and documented other means of showing her work performance has been altered through these years working at Chrysler.

In sum, Ms. VanDalsen has failed to establish a *prima facie* case for retaliation in the form of a hostile work environment because she fails to show that the conduct rises to

the objective level that would permit a trier of fact to conclude that it was pervasively hostile.

**C.     Whether the Union discriminated against Ms. VanDalsen.**

Finally, as the Seventh Circuit has noted:   "The asserted symmetry between employer and union is spurious."   *E.E.O.C. v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 659 (7th Cir. 2003).   Therefore, with regard to Ms. VanDalsen's claim against the Union, she must additionally present evidence that based on a breach of a duty of fair representation: (1) the employer violated the collective bargaining agreement with respect to the plaintiff; (2) the union permitted the breach to go unrepaired, thus breaching its own duty of fair representation; and, (3) there was some indication that the union's actions were motivated by discriminatory animus.   *Armour v. Indep. Limestone Co.,* IP99-898-C-T/G, 2000 WL 1701962 (S.D. Ind. Mar. 16, 2000) (*See also Greenslade v. Chicago Sun Times Inc.,* 112 F.3d 853, 866 (7th Cir.1997); *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 868 (7th Cir.1985)).

With regard to the first element, Ms. VanDalsen claims that the Union stopped her from getting the grinder position on the basis of seniority (Pl.'s Br. at 20) and that it transferred her without regard to her seniority (*id*. at 29).   However, Ms. VanDalsen has failed to produce sufficient evidence that there was any breach of the duty of fair application of the rules under the CBA by distinguishing the circumstances of her case with the situation of other employees who were transferred or did not get positions for which they applied.   Even is Ms. VanDalsen had been able to satisfy this requirement, she is still

required to show that these actions were impelled by discriminatory animus; indeed, Ms. VanDalsen asserts that Mr. Johnson was "incompetent" across the board, failing to handle complaints within the plant. (VanDalsen Dep. At 227, 234). Such broad assertions indicate that the Plaintiff's medical condition had little to do with Mr. Johnson's action or inaction. This, coupled with the detailed discussion of the alleged hostile work environment discussed above, establish that Ms. VanDalsen has failed to meet her burden in order to survive summary judgment on her claims against the Union.


## CONCLUSION

Having considered the parties' briefing and documentary evidence filed in connection with these motions, for the reasons detailed above, Defendants' Motions for Summary Judgment (dkt. nos. 51, 54) are both GRANTED. Judgment shall enter accordingly.


IT IS SO ORDERED.


Date: _____03/31/2014_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jay Meisenhelder
EMPLOYMENT AND CIVIL RIGHTS LEGAL SERVICES
jaymeisenhelder@gmail.com

Michael W. Padgett
JACKSON LEWIS P.C. - Indianapolis
padgettm@jacksonlewis.com

Jeffrey A. Macey
MACEY SWANSON & ALLMAN
jmacey@maceylaw.com

Nora L. Macey
MACEY SWANSON AND ALLMAN
nmacey@maceylaw.com